UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 23 C 16024 |
| | ) | |
| THOMAS J. DART, in his official capacity as Cook County Sheriff, et al., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This civil rights case brought under 42 U.S.C. § 1983 and Illinois state law stems from the alleged use of excessive force during an altercation between Plaintiff Kenneth Taylor and certain correctional officers at the Cook County Jail in February 2023. Because Plaintiff was incarcerated when he filed suit, he needed to comply with the Prison Litigation Reform Act, which demands prisoners exhaust their administrative remedies prior to suing in federal court. 42 U.S.C. § 1997e(a). Before the Court is Defendants' limited motion for summary judgment on the issue of exhaustion. Defendants argue Plaintiff's claims are barred because he failed to follow the Cook County Department of Corrections' grievance procedures before filing suit, thereby failing to exhaust his administrative remedies. For the reasons that follow, Defendants' Motion is granted in part and denied in part.

## BACKGROUND

In resolving a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The following facts are taken from the record and are undisputed unless otherwise noted.

### I.   Plaintiff's Grievance

On February 24, 2023, Plaintiff was involved in an altercation with various correctional officers while detained at the Cook County Jail ("Jail"), which is operated by the Cook County Department of Corrections ("CCDOC"). On February 26, 2023, Plaintiff submitted an inmate grievance form detailing the altercation and naming Defendants Hidalgo and Mintah, both Cook County Sheriff's Office employees, as the accused. The grievance form states:

> On Feb. 24, 23 at approximately 6:30 pm, I headed out my cell for my dayroom hours & was pat down by Officer Hildago #18391 & Officer Mintah # 18358 said officer went in my pocket & proclaim to have found something in my pocket at which time said officers became very forceful – pushing /grabbing me hard on the wall, I informed said C/O's that I had nothing in my pocket at which time officers became all the more aggressive pushing my face in the wall with force, chocking me and hitting me hard down the side of my body telling me to spit something out. At no time did I in anyway disrespect or assault C/Os but continued applying force to my face & ribs telling me give it to them or they would beat the shit out of me, that of which I feel they did by damaging my ribs & swelling my face. At no time was anything taken from my possession. I was taken to Cermak Hospital & due to experiencing seizure attacks & all the injuries incurred to my head, arms & ribs, I had to be taken to the Cook County Hospital for treatment & was placed on medication. I was returned to the institution & transferred to the Medical Division. Again, please note: now suffer from pain in my face – Black eye swollen & in

2

> pain swelling to eye, ribs, arms. I did not in anyway disrespect C/Os or in anyway assault these C/O's.

Dkt. # 50-3, at 3–4.

On March 3, 2023, Plaintiff's grievance was e-mailed to the Cook County Sheriff's Office of Professional Review ("OPR") for review and/or investigation. The correspondence states that "IIC Services Central Office will provide the response to this grievance."[1] Dkt. # 52-4, at 3.

Also on March 3, 2023, Plaintiff received a grievance response/appeal form, which stated that his grievance was referred to OPR. Plaintiff signed and dated the grievance response/appeal form that same day. Directly below Plaintiff's signature, the form states:

> To exhaust administrative remedies, a grievance appeal must be made on this form and within 15 calendar days of the date the individual received the above noted response. An appeal must be filed in ALL circumstances in order to exhaust administrative remedies, regardless if the grieved issue(s) have been referred for further review and/or investigation. Any pending O.P.R. review or investigation, is NOT part of the grievance appeal process.

Dkt. # 50-3, at 6 (emphases in original).

An IIC document was attached to the grievance response form, which stated, in pertinent part:

> Although this R/Supv. cannot substantiate or deny your allegation(s), please be advised that your grievance has been forwarded to the Offices or Professional Review and Divisional Superintendent for their review and/or investigation.

---

[1] Individual in Custody Services ("IIC") is the department responsible for receiving, processing, tracking, organizing, and maintaining records related to grievances submitted by inmates.

***

You may follow-up with the Office of Professional Review by contacting their office directly, by utilizing the address below.

***

To exhaust your administrative remedy (regardless of the OPR investigation review, determination, or outcome), you must appeal this immediate grievance response within 15 calendar days.

Dkt. # 50-3, at 5 (Spanish translations omitted). The form also provides the mailing address for OPR.

On March 9, 2023, Plaintiff was transferred into the custody of the Illinois Department of Corrections ("IDOC"). He never appealed his grievance. He never received any further information from the CCDOC regarding his grievance after March 3, 2023.

A July 6, 2023 IIC Services Emergency Grievance Action Review Form, which was reviewed and approved by the Superintendent's designee Lt. Fitzgerald, states: "Detainee Taylor is currently discharged from CCDOC. The incident that detainee Taylor refers to in his grievance was documented in CCOMS Div6-2023-4293." Dkt. # 52-5, at 2.

On November 16, 2023, Plaintiff filed his complaint in this case against Defendants Hidalgo, Mintah, Sheriff Dart, and "other unknown Cook County correctional officers" who responded to the altercation "and dragged the Plaintiff, who was in and out of consciousness, off the tier." Dkt. # 1, ¶ 13. After some discovery, on July 17, 2024, Plaintiff amended his complaint, identifying Officer Ochoa (together with Officers Hidalgo and Mintah, "Officer Defendants") as the unknown officer.

4

The amended complaint alleges that Officers Hidalgo and Mintah removed Plaintiff from his cell for his day room hours. They secured Plaintiff in handcuffs and, while patting him down, Officer Mintah discovered a folded-up piece of paper in Plaintiff's pocket. When Plaintiff attempted to grab the paper from Officer Mintah, the two officers "forcibly slammed the Plaintiff to the ground and beat him about his head and body while Plaintiff was still handcuffed." Dkt. # 31, ¶ 11. With respect to Officer Ochoa's actions, the amended complaint alleges that other officers, including Officer Ochoa, responded to the scene "and dragged the Plaintiff, who was in an out of consciousness, off the tier." Dkt. # 31, ¶ 12. Plaintiff further alleges, "As Officer Ochoa was dragging the handcuffed Plaintiff off the tier, Officer Ochoa slammed Plaintiff's head into a doorway, which caused Plaintiff to immediately go into a seizure." *Id.* ¶ 13. Defendants argue that the claims against Officer Ochoa are not exhausted because Plaintiff did not mention Officer Ochoa in his grievance.

## II. CCDOC Grievance Procedure

The CCDOC maintains a formal inmate grievance procedure that explains the process for filing a grievance. According to the grievance procedure, inmates are instructed to complete a grievance form when they have been "injured, harassed, abused, or threatened." These forms are available in each living unit, but can also be obtained through the Jail's Correctional Rehabilitation Workers ("CRWs") or an IIC staff member. A blank piece of paper can also suffice if an official form is not available. The inmate grievance form instructs inmates to provide the specific date, location, and

time of incident or event that they are grieving, and to provide the names and/or identifiers of the accused person(s).

Inmates can give completed grievance forms directly to a CRW or a Correctional Supervisor when those employees make their daily rounds. To file a grievance once out of CCDOC custody, the grievance procedure prescribes that the form must be sent to "CCDOC Inmate Services Department 2700 S. California Ave. Chicago, IL 60608." The grievance procedure requires inmates to submit (or postmark) a grievance form within 15 days of the alleged offense.

Upon receipt of an IIC grievance form, the CRW, IIC Services Supervisor, or Correctional Supervisor signs and dates the form and immediately provides the individual in custody with a copy of the submitted grievance. An appeal must be submitted within 15 days of receipt of a response to a grievance.[2]

Plaintiff contends that he was never informed or instructed where or how to appeal a grievance made at CCDOC once he was transferred to IDOC. Plaintiff further contends that no appeal was required for the referral to OPR because it was not a negative or final disposition. Defendants disagree on both points and move for summary judgment on the limited issue of exhaustion.

---

[2] One of the primary disputes between the parties is whether the notice stating that Plaintiff's grievance was referred to the Office of Professional Review was a "response" that Plaintiff was required to appeal within 15 days.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

The Prison Litigation Reform Act ("PLRA") bars prisoners from bringing federal claims "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners must comply strictly with the prison's own rules and processes governing grievances to satisfy this exhaustion requirement. *See Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020). If the institution provides an administrative appeals

process, prisoners must exhaust that process too. *See id.* Exhaustion is an affirmative defense, which means prison officials bear the burden of showing that a prisoner failed to exhaust administrative remedies. *See id.* In assessing whether the defendant has met his burden, a district judge should typically hold a *Pavey* hearing to resolve any factual disputes. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). But "if the court can resolve the question of exhaustion based on the . . . documentary evidence," a hearing is "unnecessary," and the Court may simply rule on the motions. *See Nesbitt v. Villanueva*, 2011 WL 737617, at *3 (N.D. Ill. 2011).

I. **Availability of Administrative Remedies**

In response to Defendants' motion for summary judgment, Plaintiff makes three primary arguments. First, Plaintiff contends the referral of his grievance to OPR was not a rejection or final disposition signed by the superintendent that necessitated an appeal. Second, Plaintiff claims that there were no remedies practically available after he was transferred to IDOC within the 15-day appeal window, because he was not given any information on how to appeal once out of CCDOC custody. And third, Plaintiff argues that he filed his complaint over four months after IIC Services did nothing regarding his grievance because Plaintiff had been discharged to IDOC custody, effectively turning the grievance process into a "procedural dead end."

Congress made it clear that prisoners only have to exhaust available remedies, not remedies that are unavailable. 42 U.S.C. § 1997e(a). An administrative remedy is not "unavailable" if it is merely confusing or ambiguous. *See Ross v. Blake*, 578 U.S.

8

632, 644 (2016). But when a remedy is so opaque that it becomes "essentially 'unknowable,'" such that no ordinary prisoner can make sense of what it demands, then prisoners are no longer required to exhaust. *Id.* at 643–44 (quoting *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1323 (11th Cir. 2007)). The Seventh Circuit has stressed that prisons should create "understandable grievance procedures, ones clear and transparent enough to allow ordinary inmates to navigate them." *Hacker v. Dart*, 62 F.4th 1073, 1078 (7th Cir. 2023).

In *Hacker*, the plaintiff, an inmate at the Jail, submitted a grievance and received a response notifying him of a referral to OPR. *Id.* at 1079. The response form stated the plaintiff had 15 days to appeal. *Id.* The plaintiff did not appeal, however, and OPR eventually issued a determination several months later rejecting the plaintiff's claims of staff misconduct. *Id.* In the subsequent civil rights lawsuit based on the complaints raised in the grievance, the Jail defendants argued the plaintiff failed to exhaust his administrative remedies by failing to file an appeal within the 15-day window after receiving the initial grievance response, and by failing to appeal OPR's ultimate denial of his claim. *Id.* at 1078, 1080–81.

The Seventh Circuit rejected the defendants' arguments. The court saw no reason why an inmate in the plaintiff's position would have believed that they should have filed an appeal over a notification that their allegations of abuse were being investigated by OPR, because the fact of a referral itself would not indicate to the inmate that there was anything to appeal at all. *Id.* at 1081 ("[A]nyone receiving the notice of referral

9

would have reacted by thinking the process was working and moving forward as it should—not by concluding there was anything to appeal. . . . Put simply, no ordinary prisoner would think to appeal an update that the jail was following its own rules."). Nor did the Jail inform the inmate that he was required to appeal after OPR issued its final decision. *Id.* The Seventh Circuit found that the Jail's grievance process "fell well short of" being "transparent enough for ordinary prisoners to navigate." *Id.* at 1083. The court thus held that the Jail's grievance procedures became unavailable to the plaintiff after the jail involved OPR, and his failure to appeal did not doom his claims. *Id.* at 1081.

Crucially, though, the notice in *Hacker* did not contain the language that is present on the IIC grievance response/appeal form in this case:

> To exhaust administrative remedies, a grievance appeal must be made on this form and within 15 calendar days of the date the individual received the above noted response. **An appeal must be filed in <u>ALL</u> circumstances** in order to exhaust administrative remedies, **regardless if the grieved issue(s) have been referred for further review and/or investigation**. Any pending O.P.R. review or investigation, is <u>NOT</u> part of the grievance appeal process.

Dkt. # 50-3, at 6 (emphases added). This point is further emphasized by the IIC notice that accompanied the appeal form: "To exhaust your administrative remedy (regardless of the OPR investigation review, determination, or outcome) you **must appeal *this immediate grievance response*** within 15 calendar days." Dkt. # 50-3, at 5 (emphasis added).

The appeal form thus explicitly tells Plaintiff that he must take action in response to the OPR referral in order to exhaust the Jail's grievance procedure. The form even provides space for Plaintiff to set forth the basis for his appeal.

The Court can't help but wonder what, exactly, Plaintiff was supposed to put in that space. While *Hacker* is distinguishable from this case, the reasoning behind the decision is applicable here. In a nutshell, Defendants argue that Plaintiff was supposed to appeal a response devoid of any substance that served no other purpose but to inform Plaintiff that his grievance was going to be referred to OPR. What would Plaintiff appeal? Nothing Plaintiff received stated that his grievance was denied or gave an opinion on its merits. To the contrary, the accompanying form states the responding officer "cannot substantiate or deny your allegation(s)." These documents state that any pending OPR review or investigation is not part of the grievance appeal process, and further instruct Plaintiff he may follow up by contacting OPR directly. They do not tell Plaintiff who to contact regarding his appeal, or where to send it.

It seems wholly counterintuitive—bizarre, really—to require an inmate to appeal a notice that offers no determination of the merits of his grievance but merely states that (1) the grievance was referred to OPR for investigation, and (2) any investigation by OPR is not part of the grievance appeal process. As Seventh Circuit in *King v. Dart*[3] aptly explained:

---

[3] The Court notes that the referral notice in *King*, as in *Hacker*, did not have the same language as Plaintiff's forms in this case. But the reasoning is instructive.

11

> Indeed, it is difficult to imagine what purpose an appeal of the grievance response form could possibly have served. If King had appealed the referral notice, the Jail would have likely reiterated that it referred the grievance to OPR and advised him to wait for the results of that investigation. Under CCDOC policy, social workers who collect grievances do not make any determination on the merits of a grievance and merely forward the grievance to an entity for response. There is no evidence suggesting that the Jail had a different protocol for prisoners who appealed their referrals. And what if King attempted to sue after receiving this unsatisfactory response to his appeal? The district court might have dismissed his case because his OPR investigation was still pending.

63 F.4th 602, 607 (7th Cir. 2023) (internal citation omitted).[4]

Nevertheless, even if the Court accepts that Plaintiff was required to appeal the notice of the OPR referral, genuine factual disputes remain that preclude the entry of summary judgment on the issue of exhaustion. For instance, how was Plaintiff supposed to know where to submit his appeal form, either before or after his transfer? He testified he was never given the inmate handbook.[5] And Defendants have not put forth any testimony or other evidence showing that Plaintiff received a copy of the handbook or was ever advised of the details of the grievance policy by Jail staff, particularly with respect to appeals. The grievance response/appeal form certainly does

---

[4] *See also Jackson v. Cook Cnty. Sheriff Thomas Dart*, 2016 WL 5390954, at *3 (N.D. Ill. 2016) ("It defies common sense to read that response [informing the prisoner that his grievance was being forwarded to OPR] as negative action on his grievance, such that an appeal was appropriate."); *Crayton v. Graffeo*, 10 F. Supp. 3d 888 (N.D. Ill. 2014) ("[W]hat inmate—or what person, really— would think to file an appeal when they were told their grievance was being handled by another office that, under the procedures, investigates all complaints of excessive force? The 'response' could only have the effect of putting a reasonable recipient in repose, waiting to hear whether his grievance had been sustained or not.").

[5] Neither was the Court, for that matter.

12

not tell Plaintiff how or where to submit an appeal. Defendants claim that Plaintiff could have mailed the appeal once he was in IDOC custody, but, again, they offer no evidence showing Plaintiff was made aware that he *could* mail his appeal, much less given instructions on where to send it. The only address he was given was for OPR, which is different from the Jail's mailing address.[6]

The Mueller declaration, upon which Defendants rely to establish the Jail's grievance procedures, is not based on personal knowledge. Instead, Mueller obtained the information "by reviewing the records and documents in the possession of the Cook County Sheriff's Office and by consulting persons employed in the Cook County Sheriff's Office." Dkt. # 50-4, ¶ 21. What records and documents? Where was Plaintiff supposed to find this information? In their statement of facts, Defendants state that "Plaintiff was made aware of the grievance procedure by being incarcerated at the CCDOC." Dkt. # 50, ¶ 36. The cited evidence for this statement is Plaintiff's testimony

---

[6] In their reply, Defendants claim that Plaintiff received documents containing the Jail's mailing address. Defendants state that when Plaintiff received his grievance response, there were two things attached to that response: (1) an "IIC services letter, requiring him to appeal in large font;" and (2) an "IIC email printout containing the mailing address to the Cook County Jail." *See* Dkt. # 57, at 8. This is different than what Defendants state in their opening brief. *See* Dkt. # 51, at 9. Defendants cite Dkt. # 52-4, attached as Exhibit D to Plaintiff's statement of additional facts. Dkt. # 52-4 consists of what appears to be two separate documents. One is a printout from a March 3, 2023 email from an IIC administrative assistant to OPR, which purports to attach Plaintiff's grievance. *See* Dkt. # 52-4, at 2. The second is a printout of a March 3, 2023 message from a Dr. Alinda Swanigan with IIC services to "Division 6 Lieutenants" and other Sheriff's Office employees. *See* Dkt. # 52-4, at 3. The Jail's mailing address is in the signature block of both of these documents. Neither of these documents, however, are included in Defendants' Exhibit C, Dkt. # 50-3, which purports to be the grievance documents given to Plaintiff. There is no evidence that Plaintiff was given either of the documents that are a part of Plaintiff's Exhibit D when he received the grievance response form.

that he learned how to file a grievance "[j]ust from me being incarcerated and knowing when an incident happens or anything happens that you feel is an issue, that you file a grievance." Dkt. # 50-2, at 16. Defendants' submissions leave the Court with more questions than answers.

Additionally, while the Mueller declaration describes the procedure for submitting a grievance, it says nothing about how to appeal a grievance response—other than to say an inmate must appeal a grievance response within 15 days. In their statement of facts, Defendants state, "To file/submit a grievance ***or an appeal*** after your CCDOC incarceration, you are required to utilize the following mailing address and your envelope must be post-marked within 15 calendar days of the occurrence of the incident, problem, or event that you are grieving CCDOC IIC Services Department 2700 S. California Ave. Chicago, IL 60608." Dkt. # 50, ¶ 20 (citing the Mueller declaration) (emphasis added). The cited evidence, however, does not specifically say that is the mailing address for an appeal; Defendants added in "or an appeal" in their statement of facts.

In sum, there are genuine issues of material fact regarding whether the Jail's administrative remedies were available to Plaintiff within the meaning of the PLRA. A *Pavey* hearing is required to resolve these questions of fact. For this reason, summary judgment on the issue of exhaustion is denied.

14

## II. Claims Against Officer Ochoa

Defendants separately argue that Plaintiff failed to exhaust his administrative remedies with respect to Officer Ochoa, because Officer Ochoa is neither named nor described in the grievance. They additionally contend that Plaintiff's amended complaint is substantively different from the grieved issues as it relates to Officer Ochoa.

One of the purposes of the PLRA's exhaustion requirement is to give the CCDOC "a fair opportunity to address [the prisoner's] complaint." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). Thus, grievances must provide "some identifying information about the accused individuals." *King*, 63 F.4th at 609. "In other words, a grievance must contain enough information about who caused the grieved of problem so that a prison can properly 'investigate and resolve grievances.'" *Jackson v. Esser*, 105 F.4th 948, 960 (7th Cir. 2024) (cleaned up). A grievance can sufficiently identify a person through a functional description even if it does not provide an actual name. *Smith v. Cook Cnty.*, 2017 WL 3278914, at *5 (N.D. Ill. 2017) (holding inmate's description of several officers, date and location was sufficiently specific to enable prison officials to investigate). The Seventh Circuit has found exhaustion as to defendants not named in a grievance "when, from the content of the grievance and the nature of the complained of conduct the prison was clearly on notice that those unnamed defendants were involved." *Jackson*, 105 F.4th at 960 (citing *Maddox*, 655 F.3d at 722). A grievance

15

must raise the same claim as the lawsuit. *Bowers v. Dart*, 1 F.4th 513, 518 (7th Cir. 2021)

Plaintiff argues that the fact that Officer Ochoa was not mentioned by name in the grievance report "does not automatically provide him with a liability escape hatch." Dkt. # 54, at 3. Plaintiff reasons that he was in and out of consciousness when Officer Ochoa allegedly dragged him off the tier and slammed his head into a doorway, causing a seizure. Plaintiff says his seizure was observed by multiple supervisors on scene such that Plaintiff's grievance was sufficiently specific about the incident to put Jail officials on notice. The Court disagrees.

Plaintiff's arguments might be more persuasive if Plaintiff noted in his grievance that other officers responded to the altercation. But the grievance does not name or identify any officers other than Officers Mintah and Hidalgo. Plaintiff in no way indicates the presence of other officers at any point in the altercation. There is no "functional description" of Officer Ochoa. Simply put, the allegations in the grievance do not support the claim Plaintiff is pursuing against Officer Ochoa in this case. Plaintiff did not give the Jail notice of his claim against Officer Ochoa. *See Bowers v. Dart*, 1 F.4th 513, 517 (7th Cir. 2021) (finding that the prisoner failed to exhaust because there was a "disconnect between the grievance and complaint"). Defendants' motion for summary judgment is granted as to Plaintiff's Section 1983 claim against Officer Ochoa. That claim is dismissed, without prejudice, for failure to exhaust.

## **CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part Defendants' Limited Motion for Summary Judgment [49] as set forth above. This matter is hereby referred to the Magistrate Judge for a *Pavey* hearing and a report and recommendation on the issue of Defendants' affirmative defense of failure to exhaust administrative remedies.

It is so ordered.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: 4/29/2025